MARGARET JANE DWYER, Respondent, v. WILLIAM E. WOOLLARD, Appellant.

Third Department, May 16, 1923.

Landlord and tenant — action by tenant for injuries suffered when she fell on ice in back yard — yard was common to several tenants — landlord is not liable where there are no bumps or ridges in ice — ice was formed from water discharged from leader pipe which was on house when tenant took possession — tenant cannot complain of this obvious defect.

A landlord is not liable for injuries suffered by a tenant when she fell on ice in the back yard, which was uncovered, had no walk laid upon it and was used in common by several tenants, and which it was necessary for the tenants to cross in order to reach the toilet in the rear, where it is not proven that the ice was in ridges or mounds of unusual size.

The fact that the ice was formed from water that was discharged from a leader pipe into the back yard does not make the landlord liable since it appears that the pipe was on the house at the time the tenant took possession and, therefore, if it constituted a defect it was an obvious one which the tenant will be deemed to have accepted and she cannot now complain.

APPEAL by the defendant, William E. Woollard, from a judgment and order of the County Court of the county of Albany, entered in the office of the clerk of said county on the 22d day of December, 1922, affirming a judgment of the City Court of Albany in favor of the plaintiff.

*Walter H. Cogan* [*Michael D. Reilly* of counsel], for the appellant.

*Lester T. Hubbard,* for the respondent.

H. T. KELLOGG, Acting P. J.:

The plaintiff was the lessee of the first floor and basement of a city dwelling house. The second story was occupied by another tenant. In the rear of the house there was a yard twenty feet wide and sixteen feet deep. Across the yard was a long shed paralleling the rear face of the building. This shed contained a toilet for the use of the tenants. The yard was uncovered and unpaved and no walk was laid upon it. On a certain day in winter the plaintiff was crossing the yard to go to the toilet in the shed. Ice had formed in the yard and was concealed from view by slush and water. The plaintiff slipped upon the ice and falling to the ground sustained a fracture of the arm. She thereupon brought this action against her landlord, the defendant, to recover damages for the injuries received.

In *Wesener* v. *Smith* (89 App. Div. 211) the plaintiff was one of several tenants who were permitted to use a common yard and there to keep cans for the deposit of ashes and garbage. In crossing the yard after emptying ashes in a can the plaintiff stumbled over a rubbish pile twenty inches high, which had been permitted to remain in the yard for several months, and was injured. The pile was partially concealed by grass and weeds. A verdict in her favor was upheld. In *Garrett* v. *Somerville* (98 App. Div. 206) the plaintiff, one of several tenants, while crossing a yard, used in common, to empty an ashpan, stepped on a drain cover which turned and threw her. The drain cover, owing to the washing away of the earth surrounding it, had for several months been in a dangerous condition. A verdict in favor of the plaintiff for injuries received from her fall was upheld. In *Hanselman* v. *Broad* (113 App. Div. 447) the plaintiff, one of several tenants, while hanging clothes upon a clothes line attached to a pole in a common yard, was injured by the falling of the pole. The pole was rotted at the point where it entered the ground and this condition had obtained for several months. A verdict in favor of the plaintiff was upheld. There can be no doubt, therefore, that in certain instances ice accumulations in a yard commonly used by tenants must seasonably be removed by the landlord. This duty, however, cannot be greater than the obligation of a municipality in relation to ice which forms upon its sidewalks. Municipalities are not required to remove ice which forms from melting snow, except where ridges or mounds of unusual size are found. (*Anthony* v. *Village of Glens Falls*, 4 App. Div. 218.) In our case it was not proven that the ice upon which the plaintiff slipped was other than a level sheet without humps or ridges. So far, therefore, as the case of the plaintiff is predicated upon the landlord's failure

to remove the ice it has no merit. (*Harkin* v. *Crumbie*, 20 Misc. Rep. 568; *Laufers-Weiler* v. *Borchardt*, 88 N. Y. Supp. 985.)

The plaintiff reasons that the ice in question was not due to natural but to artificial causes; that water from melting snow upon the roof of the dwelling was collected in eaves-troughs or gutters; that it was guided to a vertical conductor which discharged it upon the surface of the yard; that the ice in question was due to the freezing of such water; that the defendant landlord was active in creating the icy condition complained of and was, therefore, liable. A householder who discharges water from a leader upon a public sidewalk is liable if ice forms therefrom and causes a pedestrian to slip and fall. (*Tremblay* v. *Harmony Mills*, 171 N. Y. 598.) In such case a householder is a trespasser and the author of a public nuisance. In our case, assuming that the ice did form from water discharged from the conductor attached to the dwelling, the landlord cast water upon premises belonging to himself. He was not, therefore, the creator of a nuisance either public or private. (*Hirsch* v. *Radt*, 228 N. Y. 100.) Moreover, no more water was caused to fall upon the yard than if the water had dripped to the ground directly from the roof. It may well be doubted, therefore, whether the presence of the water conductor in any wise increased the hazard of the tenant. But there is still a more sufficient answer to the argument. The conductor was already attached to the building when the plaintiff became a tenant. It was then an obvious fact that it would discharge the roof waters in a single stream upon the surface of the yard. Where premises are rented to a single tenant there is no covenant that their condition is habitable, and, except for fraud, the tenant must take them as he finds them. (*Jaffe* v. *Harteau*, 56 N. Y. 398.) " A fraud is committed upon the tenant within the meaning of this rule when there is a latent defect in the premises known to the landlord at the time of the letting, but unknown to the tenant, and not discoverable in the exercise of reasonable care in inspection on the part of the tenant." (McAdam Landl. & Ten. [4th ed.] 1616.) The distinction between premises demised to a single tenant and a common passageway retained by a landlord for the use of several tenants, that the landlord covenants in future to maintain the latter but never covenants to maintain the former, does not affect the problem of responsibility for obvious hazards already existing, whether in the premises actually demised or in the passageway and yards devoted to the common use of several tenants. If a tenant must accept the hazard of occupying the former he should in reason accept the hazard which obviously lies in availing himself of the use of the

latter. That obvious defects already existing in the common passageways and yards of a tenement are accepted by the tenant is the rule in Massachusetts. (*O'Malley* v. *Twenty-five Associates,* 178 Mass. 555.) That this rule is favored by the highest court of our State is the intimation which I receive from the opinion in the case of *Hirsch* v. *Radt* (*supra*). In our case ordinary care would have revealed to the plaintiff the presence of a conductor which would discharge the roof waters in a single stream upon the surface of the yard. No fraudulent concealment of this defect in the common yard, if defect it was, was made. Therefore, the plaintiff accepted the premises demised and the appurtenant yard in the condition then existing and could not thereafter complain that such condition was not changed. For these reasons I think the defendant was not responsible for her injuries.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

Kiley, Van Kirk, Hinman and Hasbrouck, JJ., concur.

Judgment and order reversed on the law, and complaint dismissed, with costs.