## HECHT CO. v. HOHENSEE.

### No. 6557.

United States Court of Appeals for the District of Columbia.

Decided March 23, 1936.

Morris Simon, Lawrence Koenigsberger, Eugene Young, and William H. Collins, all of Washington, D. C., for appellant.

Cornelius H. Doherty, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

ROBB, Associate Justice.

Appeal from a judgment for the plaintiff in the Supreme Court of the District in an action for damages for personal injuries.

In his declaration plaintiff alleged that on February 5, 1934, he was walking on the sidewalk in front of premises owned by the defendant, Hecht Company, in which it operated a department store; that it was the duty of the defendant to keep the sidewalk in a reasonably safe condition so that persons lawfully using the same would not be injured; that, notwithstanding its duty in the premises, the defendant "cleared certain portions of the said sidewalk of the snow and ice which had accumulated thereon, placing the said ice and snow so removed into piles on the said sidewalk, permitting jagged pieces of frozen snow and ice to remain thereon, * * * by reason of which the plaintiff slipped and fell," sustaining severe injuries.

The Hecht Company filed two pleas, in one of which it denied the allegation of duty and its negligence; in the other it pleaded contributory negligence of the plaintiff.

Plaintiff, a taxi driver, testified that on the morning of February 5, 1934, he took passengers to the Hecht Company store. They asked to be discharged at the side, or easterly, entrance on F street (employees' entrance). He parked his car opposite that entrance, and, as he desired to purchase gloves, got out of the car, "and as I was going toward the store, toward the entrance there, there was ice piled up. And I was cautious. I saw the condition of it. But somehow I just slipped down. *The sidewalk was icy and very rough,* and when I slipped and fell,

I fell quite hard." (Italics ours.) The portion of the sidewalk next to the building was cleared to a width of 4 or 5 feet, and either sawdust or gravel had been thrown on the cleared path. (The sidewalk was 20.65 feet in width.) Asked, "Where was the snow placed?" plaintiff replied: "That was on the part between the part that was cleared off and the edge of the pavement [sidewalk]." "There was plenty of snow in the street portion; * * * there was no pathway to the employees' entrance [opposite which plaintiff had parked]; there was a pathway to the main entrance; * * * There was some snow piled up real high between the street and the curb. * * * I don't know whether the snow sweepers had thrown it off; there was snow and ice everywhere." The snow in the street was more uneven than on the sidewalk, and the snow in the street was about level with the snow on the sidewalk. "The snow was twelve inches some places and sixteen inches and more at another; you can't say that the highest part was at one particular spot, because it was all uneven, there wasn't any particular spot that was more unlevel than the others; the general condition was that it was fourteen inches in one place, and then dropped down, and it was just about the same at the curb."

On cross-examination plaintiff testified: "I approached The Hecht Store from Seventh Street; as I came along there, there was plenty of snow and ice there, which I think extended all along F Street there; throughout my course of travel to The Hecht Store from Sixteenth Street, the snow was about the same, with the exception of some places where it was piled up more than in other places; * * . * I know the sidewalk was cleared at the first entrance, the large entrance, on F Street of The Hecht Company. * * * There were quite a number of cars parked on the south side of F Street next to Hecht's Store."

The general superintendent of the Hecht Company was called for plaintiff and testified: "We have the porters clean the snow off the sidewalk around The Hecht Company."

The temperature for the period February 3d, 4th, and 5th, inclusive, ranged from 13° above to 43° above. There was "a very heavy snow" three or four days before the day of the accident.

At the close of plaintiff's evidence, the defendant moved for a directed verdict on the ground that no negligence had been shown and upon the further ground that plaintiff was guilty of contributory negligence. To the denial of this motion defendant objected and excepted. After introducing evidence tending to impeach the testimony of a witness for the plaintiff, the defendant repeated the motion for directed verdict on the same grounds, and again objected and excepted to its denial.

In Norville v. Hub Furniture Co., 59 App.D.C. 29, 32 F.(2d) 420, we held that, in the absence of statutory provision to the contrary, the owner or occupant of property owes no duty to pedestrians to keep the sidewalk in front of it free from ice and snow coming thereon from natural causes; nor does a storekeeper owe any greater duty in this regard to customers leaving his store than he owes to ordinary pedestrians.

In Taggart v. Bouldin, 111 N.J.Law, 464, 168 A. 570, 571, an action for damages for injuries received by falling on an icy sidewalk after a heavy fall of snow, the owner of the premises in front of which the accident happened had caused the snow on the sidewalk to be shovelled off, and some of it thrown toward the curb and some on the abutting property owner's lawn. Warm weather by day caused the snow to melt so that water from the melted snow trickled across the sidewalk. Colder weather at night froze the water into ice on the sidewalk, and the plaintiff, in walking past the defendant's premises, slipped and fell. The court, in affirming a judgment of nonsuit, said: "There was no duty on the owner of the premises to shovel off this sidewalk. There is no allegation that any action of the defendant increased the hazard that exists on sidewalks during the snow period of the winter. The property owner cannot be made out to be an insurer of the safety of pedestrians using the sidewalk. The action of the defendant, in having the sidewalk shoveled off, introduced no new element of danger; rather the opposite resulted, and the danger was lessened. Had the snow been left on the sidewalk, the warmth of the sun would have melted that snow as well as that which fell upon the lawn, converting it into water which, when the temperature fell, would have frozen, rendering the

sidewalk equally, if not more, dangerous to pedestrians, and, if the plaintiff under those conditions had fallen and sustained injuries, she would have no cause of action." Aull v. Lee, 84 N.J.Law, 155, 85 A. 1018, was expressly overruled.

In Arning v. Druding, 96 N.J.Law, 47, 114 A. 158, in which the court affirmed a judgment of nonsuit, the defendant had shoveled the snow off the sidewalk and piled it along the curb on one side and along the hedge on the other. This was followed by thawing and freezing, and thereafter a pedestrian using the sidewalk was injured.

In Mahoney v. Perreault, 275 Mass. 251, 175 N.E. 467, 468, it was held that, if a landowner merely shovels snow from the sidewalk in front of his premises upon a space between the outer edge of the walk and the curb of a public way and it melts and runs over the walk and thereafter ice is formed, the landowner cannot be held liable to a traveler for injuries sustained by slipping on the ice. The evidence disclosed that, after the snow fell upon a concrete sidewalk, it was removed by the defendant and thrown upon the grass plot near the curb. "So far as appears," said the court, "there was no other place where he could have deposited it unless he threw it into the street thereby impeding travel, or caused it to be carried away. * * * The defendant violated no duty he owed the plaintiff by clearing snow from the sidewalk in front of his premises. He acted within his rights in shovelling it upon the grass plot. * * * A landowner cannot be held liable if he shovels snow from the sidewalk in front of his premises upon the space between the outer edge of the walk and the curb and it melts and runs over the walk and thereafter ice is formed." See, also, 43 C.J. p. 1106, § 1869; 13 R.C.L. p. 415, § 341; p. 417, § 343.

In the instant case there had been a very heavy snowfall three or four days before the accident, followed by freezing and thawing weather. The sidewalk adjacent to the defendant's building on F street was 20 feet wide. Obviously it would have been impractical for defendant to attempt to clear more than a portion of the walk, and that is what was done, presumably immediately following the snowfall. Something had to be done with the snow that was shoveled off. It could not have been thrown in the street without impeding traffic, but was deposited where it could do the least harm; namely, towards the curb. The thawing and freezing weather that followed and the use of the walk by the public were certain to make it "icy and very rough," as characterized by plaintiff in his testimony. This is indicated by the statement of the plaintiff that "the snow in the street was more uneven than on the sidewalk." Defendant was not bound to remove the snow, and, had it not done so, the thawing and freezing weather and the use of the walk by the public would likewise have made the walk "icy and very rough." In other words, whether the snow was removed or not, the walk would have been "icy and very rough," and, since the defendant would not have been liable had it permitted the snow to remain, it is no more liable under the circumstances of this case by undertaking to clear a portion of the walk.

Since a directed verdict should have been granted at the close of all the testimony, it is unnecessary to consider other assignments of error.

Judgment reversed.

Reversed and remanded.